UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE. NW
WASHINGTON, DC 20001

STEPHEN A. MAYBANK
PO BOX 54088
MILLINGTON, TN 38054
(540) 533-2985

VS.

Case: 1:17-cv-01246
Assigned To : Howell, Beryl A.
Assign. Date : 6/26/2017
Description: Employ. Discrm.    (H-Deck)

ROBERT M. SPEERING
ACTING SECRETARY OF THE ARMY
101 ARMY PENTAGON
WASHINGTON, DC 20310-0101

## Complaint:  Retaliatory Discrimination and Failure to

## Comply with Statutes Governing Complaint Processing Time Periods

Pursuant to the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. 2000e - 16 – *Employment by Federal Government*, and 29 U.S.C. Part 1614 – *Federal Sector Equal Employment*, Plaintiff moves the US District Court to find retaliatory discrimination against Defendant (Agency) and to sanction the Agency for failure to timely process the complaint. Plaintiff contends that the Agency retaliated against him for protected EEO activity, when it (Agency) deliberately failed to follow CHRA's policy in the processing of a desk audit, which was agreed upon in a *Negotiated Settlement Agreement*; the Agency violated the terms of the settlement agreement by involving a non-supervisor, who was a name person in Plaintiff's prior EEO complaint, in the desk audit

1

RECEIVED

JUN 2 6 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

process. This person submitted negative and inaccurate written statements to the Auditor, who incorporated and cited the non-supervisor's statements in the desk audit analysis.

And, Plaintiff requests the Court sanctions the Agency for failing to:

a. Timely investigate the complaint or to obtain a written agreement from Plaintiff to extend the time period beyond 180 days (29 C.F.R. § 1614.106(e)(2) & 29 C.F.R. § 1614.109(e))

b. Timely process and complete the complaint by issuing a final action within 180 days (29 C.F.R. § 1614.106(e)(2)  and (42 U.S. Code § 2000e–16(c)).

c. Timely submit Plaintiff's complaint docket and file to the EEOC, within the required 15-day time period after receipt on Plaintiff's direct request for EEOC hearing (29 C.F.R. § 1614.109(f))

d. To develop an impartial and appropriate factual record upon which to make findings on the claim (29 C.F.R. § 1614.108(b))

See section "VI Motion for Sanction" for further explanation regarding the above sanction request. The undisputed facts in this case are provided in the arguments and supported with documented evidences and written testimonies.

## TABLE OF CONTENT

| Item # | Topic Description | Page # |
|--------|-------------------|--------|
| I | Authority to File a Civil Claim…………………………………………4-5 | |
| II | Key Personnel Involved in the Complaint……………………6 | |
| III | Accepted Claim and Undisputed Facts…………………………6-14 | |
| IV | Legal Analysis……………………………………………………………14-17 | |
| V | Deficient Report of Investigation…………………………………17-18 | |
| VI | Motion for Sanction……………………………………………………… 19-21 | |
| VII | Compensation for Damage…………………………………………22 | |
| VIII | Conclusion…………………………………………………………………...22-24 | |

List of Exhibits:
Exhibit 1: Request for Hearing and Motion for Sanctions
Exhibit 2: Defendant's Hearing Request to the EEOC
Exhibit 3: Signed Memorandum for Record, Ms. Lena Shealayno'sun
Exhibit 4: Analysis of Declarative Statements
(Taswell/Grittman/Heinrichs/Williams/King/Gosciewski)
Exhibit 5: Complainant's Scope of Responsibilities Documents
Exhibit 6: Mr. Williams' Non-Sworn Affidavit
Exhibit 7: Electronic Copy of the ROI and Referenced Page List

## I - Authority to File a Civil Claim

An aggrieved person under *42 U.S. Code § 2000e–16 - Employment by Federal Government* may file a civil suit, "-- if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

After exhausting the Agency and EEOC administrative process, Plaintiff may file civil action, per *29 C.F.R. PART 1614—FEDERAL SECTOR EQUAL EMPLOYMENT OPPORTUNITY Subpart A—Agency Program to Promote Equal Employment Opportunity,* applicable Sections § 1614.104(5), § 1614.108(b) & § 1614.407(d). The EEOC has not sent Plaintiff the "Acknowledgement and Order" to confirm receipt of the request for hearing.[1]

More than 180 days has passed since the date of filing an individual complaint with the EEOC and no appeal or final action has been taken. Per court <u>Memorandum Opinion</u>, Civil Action No. 16-1681 (RDM)(Maybank v. Speer, Acting Secretary of the Army), US District Court, District of Columbia, dated May 3, 2017, Plaintiff is allow to re-file a civil suit after the 180-day period elapsed, which by court opinion is June 14, 2017:

> "Rather, when faced with a prematurely filed complaint, the "district court [must] dismiss the complaint without prejudice," and the prospective Plaintiff may the re-file on the 180-day period has elapsed. - - Counting from the earlier of his two requests for an EEOC hearing – the letter sent on March 22, 2016 – only 148 days

---

[1] [1] In accordance with the *U.S. Equal Employment Opportunity Commission Handbook for Administrative Judges July 1, 2002,* an Administrative Judge (AJ) is to be assigned within fifteen days of receipt of the hearing request, and as soon as practicable, the AJ should send the Acknowledgement and Order.

passed before he filed suit in this Court on August 17, 2016." (Civil Action No. 16-1681 (RDM)(Maybank v. Speer, Acting Secretary of the Army).

Some key dates relevant to the complaint are:

a.  June 11, 2015, date Complainant filed the *Formal Complaint (DA Form 2590)*

b.  September 8, 2015, The Agency accepted complaint

c.  December 10, 2015, date the Report of Investigation and Notice of Rights were due

d.  February 17, 2016, date Complainant submitted *Employee's Rebuttal to Declarative Statements* to the EEO Investigator

e.  February 17, 2016, date Complainant sent an *Offer of Compromise* to the Agency

f.  March 22, 2016, date Complainant sent the *Request for Hearing and Motion for Sanctions* to the EEOC Court (Exhibit 1: Request for Hearing and Motion for Sanctions)

g.  March 29, 2016, date ROI was completed.

h.  April 27, 2016, date Plaintiff received and electronic copy of ROI and the Notice of Rights (Dated 14 Apr 16), (Exhibit 2: The Defendant's Hearing Request to the EEOC). The EEOC Court has not sent the Acknowledgement and Order to Complainant.[2]

i.  May 11, 2016, date Plaintiff responded to the Agency's Notice of Rights and reaffirmed the *Request for Hearing and Motion for Sanctions*

j.  August 17, 2016, date Plaintiff filed a civil claim at the U.S. District Court, DC

k.  May 3, 2017, date the Court dismissed Plaintiff suit (Re-file authorized June 14, 2017)

l.  June 26, 2017, date Plaintiff re-filed his civil suit with the U.S. District Court

---

[2] In accordance with the *U.S. Equal Employment Opportunity Commission Handbook for Administrative Judges July 1, 2002*, an Administrative Judge (AJ) is to be assigned within fifteen days of receipt of the hearing request, and as soon as practicable, the AJ should send the Acknowledgement and Order.

## II - Key Personnel Involved in the Complaint[3]

    **a.** Mr. Robert L. Gosciewski – Former Director, USACE Logistics Activity, Male Caucasian

    b. Mr. Reginald W. King – Deputy Director, USACE Logistics Activity, and second-level supervisor to Plaintiff, Male African-American

    c. Mr. Bradley S. Williams – First-Level Supervisor to Plaintiff, Male Caucasian

    d. Mr. Stephen A. Maybank – Plaintiff and employee USACE Logistics Activity, Male African American

    e. Ms. Belinda K. Taswell – Deputy Director, G-4 (Logistics), a non-supervisor to Complainant, Female African-American

    f. Ms. Rebecca A. Heinrichs – Human Resource Specialist, Civilian Personnel Office, Female Caucasian

    g. Mr. John Fred Grittman – Supervisor, Human Resource, Civilian Personnel Office, Male Caucasian

## III - Accepted Claim and Undisputed Facts

On 11 June 6, 2015, Plaintiff filed a formal complaint of discrimination alleging that he was discriminated against based on his prior EEO activity when:

    h. On 21 April 2015, he became aware that Mr. Reginald King, Deputy Director, USACE, Logistics Center, removed from the desk audit his first line supervisor, Mr. Bradley Williams, Chief, Plans and Operations Division, USACE Logistics Center.

    i. On 1 May 2015, he became aware that the Memphis CPAC primarily used the incomplete and inaccurate statements of Ms. Belinda Taswell, Deputy Director, G-4 (Logistics), Formerly Director of Logistics (DOL), as the basis for its determination of the desk audit.

---

[3] A Witness List, identifying Complainant's witnesses, was provided to the Investigator, See ROI 001061, pg. 1043.

j.   On 1 May 2015 he became aware that Director Robert Gosciewski and Mr. Reginald

King lobbied and negotiated with the Memphis CPAC to lower the desk audit rating.

On November 6, 2014, Plaintiff filed an informal complaint for race discrimination in regards to the selection process for a GS-14 position. Ms. Belinda Taswell, was a named responsible management official in the informal complaint for derogatory comments she had made against Plaintiff (Annex 3: Signed Memorandum for Record Ms. Lena Shealayno'sun; also listed in the ROI 000770/pg. 752). Also, Ms. Taswell served on the promotion selection board to which Plaintiff applied and was subsequently interviewed. Two witnesses (Ms. Lena Shealayno'sun and Ms. Rhonda Mustafaa) gave direct testimonies to the EEO Counselor confirming that Ms. Taswell participated in the negative, derogatory discussion against Plaintiff (ROI 000027-000028 & 000031/pg. 9-10 & 13).[4]

Subsequent to the conclusion of the previous EEO complaint, Plaintiff requested compensation for the expenses associated with his employment relocation. The Agency failed to provide Plaintiff with the relocation reimbursement and thus Plaintiff filed a grievance to resolve the issues. The grievance specifically challenged the mandate issued by Director Robert Gosciewski that ordered Plaintiff's relocation from Winchester, Virginia to Washington D.C., without providing him with his entitlements for Permanent Change of Station (PCS), per the Joint Travel Regulation and Army Command policy.

---

[4] Complainant's listed witnesses (Ms. Lena Shealayno'sun, Ms. Rhonda Mustafaa and Mr. Stephen Ridenour), who had given rebuttal testimonies to the EEO Counselor (ROI 000027-000028 & 000031/pg. 9-10 & 13), were not discussed in the Investigator's report. Ms. Shealayno'sun's also provide a written memorandum for record (ROI 000382/pg. 364), which was also not addressed by the Investigator.

On December 20, 2014, the parties settled the previous informal EEO complaint, and the Agency agreed to provide Plaintiff with a desk audit to assess whether or not his accreted duties qualified him for promotion to the GS-14 grade level. As part of the agreement, the Agency promised to review Plaintiff's current position, and to complete "any necessary requirements to facilitate the review."

In spring 2015, the Agency commenced with the agreed upon desk audit. However, the Agency did not conduct the audit in a fair or unbiased manner or in compliance with CHRA policy. Rather, Reginald King, Deputy Director, and Robert Gosciewski, Director, who served as the approving officials for Plaintiff's desk audit, failed to allow Plaintiff the opportunity to state his case, in an objective review, to inform the decision on the desk audit, they failed to appropriately consult Plaintiff's supervisor in furtherance of the desk audit.

The Agency failed to ensure the full participation of Plaintiff's first-level supervisor, Bradley S. Williams, Chief, Planning and Operations Division, USACE Logistics Activity. As Plaintiff's first level supervisor, Mr. Williams was the most knowledgeable of Plaintiff's increased duties and responsibilities. But management and HR officials limited Mr. Williams' input to determine whether Plaintiff's position should be reclassified (Exhibit 4: Analysis of Declarative Statements (Taswell/Grittman/Heinrichs/Williams/King/Gosciewski). And instead of Mr. Williams, the Agency's management and HR Officials sought input from Ms. Taswell, an individual who works outside of Plaintiff's organization and who has extremely limited knowledge of Plaintiff's complete position description, workload and duties. She did not rate his performance, was not even within his chain of command, and did not communicate with his first-level supervisor.

a.  In his Declarative Statement, Mr. Fred Grittman (Supervisor, Human Resource, Civilian

    Personnel Office, Memphis) responded, "Maybank is calling Ms. Taswell a liar if he is

    saying she provided false statements. Plaintiff provided a list of duties in the desk

    audit request memo (Subject: Request Desk Audit of Duties and Responsibilities,

    dated 2 FEB, 2015) and he felt he was doing work beyond his PD. **I also knew Ms.**

    **Taswell later commented on Plaintiff's written statements by providing notes**

    **directly on the pdf memo. Ms. Taswell's comments were later given to Ms.**

    **Heinrichs. Ms. Taswell made comments about how accurately Plaintiff represented**

    **the duties.**" (ROI 00167/pg. 149).[5]

b.  In regards to the Ms. Taswell's involvement in the desk audit, Ms. Rebecca Heinrichs'

    analysis indicated, "Enclosure 5 is DOL's response to Plaintiff's additional duties and

    responsibilities he is claiming are outside of his current PD." (ROI 000217/pg. 199).

    But In her analysis of the desk audit, Ms. Heinrichs cited Ms. Taswell as a source for

    her evaluation determination.

c.  Ms. Heinrichs responded in her Declarative Statement, "I never spoke with Ms.

    Taswell in connection with the desk audit." She continued, "She (Taswell) typed up

    her analysis, task by task, and then **she digitally signed it** on February 4, 2015. I did

    not have any reason to doubt the authenticity of Ms. Taswell's notes because she

    digitally signed them and I could clearly make that out. I read Ms. Taswell's notes, and

    then did my own evaluation of the PD and duties. Some of the duties Ms. Taswell

---

[5] Mr. Fred Grittman is the HR Supervisor to Ms. Rebecca Heinrichs (the HR Specialist who conduct Complainant's desk audit).

spoke about were temporary assignments, and those fell within Mr. Maybank's duties." (ROI 000155/pg. 137). But Ms. Heinrichs' supervisor (Mr. Grittman) stated she communicated with Ms. Taswell by phone.

    d. In response to a question from the Investigator of the knowledge Ms. Taswell holds on Plaintiff duties, Mr. Williams stated, "Ms. Taswell probably has no clue about what Mr. Maybank does for me. She can only speak for the tasks Mr. Maybank does for the DOL." (ROI 000121/pg. 103).

In response to the Investigator's question about Plaintiff's supervisor involvement in the desk audit process, Mr. Williams responded, "That is hard for me to say because my participation was very narrowly defined. I was asked questions, I gave my answers, and that is about all I know. I probably should have been more involved in the whole process, because I was Mr. Maybank's supervisor. **I think that is what Mr. Maybank is saying, that I was cut of the process from the beginning. Nobody told me I would be removed from the process. I just wasn't included to begin with.**" (ROI 000009 & 000122/pg. 6 & 104).

The question remains, was Ms. Taswell motivated to retaliate against Plaintiff for prior EEO activity? A principle means of determining intent is to evaluate the truthfulness and consistency of a witness testimony. So, let's examine some of Ms. Taswell's prior statements:

    a. When asked by the EEO Counselor whether or not she participated in Plaintiff desk audit, the Counselor recorded, "Ms. Taswell stated that she had none at all, it was part of the EEO complaint of the Aggrieved and she gave no response to the CPAC." (ROI 000029/pg. 11). But Mr. Grittman and Ms. Heinrichs both confirmed she did (ROI 00167/pg. 149) & (ROI 000155/pg. 137).

b.  The Investigator noted, "Ms. Taswell believes Mr. King sent her the document for her information only; he made no request for her feedback or assessment (IF p 127). Ms. Taswell states she annotated the document in order to highlight what she was reading, not for any other purpose. Ms. Taswell affirms she sent her comments back to Mr. King and Mr. Gosciewski. She has no idea if or how they were factored into the desk audit. Ms. Taswell states she provided Mr. King and Mr. Gosciewski with a background explanation of the work Plaintiff did with DOL (IF p 128; see notes at IF pp 337-341)."

Again, she typed her response and digitally signed the document ROI 000359/Pg. 341), which was sent to the HR Specialist, and they (Taswell and Heinrichs) communicated in conference calls, according to Mr. Grittman (ROI 00167/pg. 149). Ms. Heinrichs confirmed a typed, digitally signed document from Ms. Taswell, which was used in the analysis for the desk audit. And, Mr. Reginald King testified he had no correspondence with Ms. Taswell regarding the desk audit and he speculated that Ms. Heinrichs, on her own accord, contacted Ms. Taswell for information.

"I am not aware that Ms. Taswell provide any feedback about the desk audit. - - If Ms. Taswell had been involved, I think I would probably have been copied on the message. – But Mr. Maybank was doing work to support DOL, so I would not be surprised if Ms. Heinrichs gathered feedback from Ms. Taswell. I would assume that if Ms. Taswell provided feedback about Mr. Maybank's duties, then Ms. Heinrichs would have factored that into her assessment," Mr. King testified. (ROI 000129/pg. 111)

In regards to Ms. Taswell communicating with Plaintiff, she testified, "Direct communication was not on a regular basis. We interacted only as needed. Our interaction was

11

more on an indirect basis when I communicated information to the DOL Team on an email distribution list." Ms. Taswell was often not included in many of the meetings or was aware of the duties assigned to me by the Director, G-4. On a regular basis, Plaintiff is required to report directly to the head of the directorate, who provided him additional work instructions and duties (Exhibit 5: Complainant's Scope of Responsibilities Documents). Since Ms. Taswell failed to ascertain Plaintiff's complete work requirements through discussion with his supervisor, unsurprisingly, she willingly provided incomplete and inaccurate information to the HR Specialist, who had evaluated Plaintiff's position description and accredited duties.[6]

The inconsistent statements made by management and HR officials are clear evidences of their intent to harm Plaintiff. In regards to the desk audit, Ms. Heinrichs testified she did not communicate with Ms. Taswell; her supervisor (Mr. Grittan) stated that she did. "I know Ms. Heinrichs had telephone conversations with Ms. Taswell, Mr. Williams and very painful conversations with Mr. Maybank," noted Mr. Grittman (ROI 000168/ pg. 150). Ms. Heinrichs stated she received Ms. Taswell digitally signed memorandum and comments, but chose not to use them. Again, Ms. Heinrichs cited Ms. Taswell as a source for concluding her evaluation determination; Ms. Heinrichs referenced an "Enclosure 5" and other statements given to her from Ms. Taswell. (ROI 000217/pg. 199). And, in regards to Ms. Heinrichs' telephonic interview with Mr. Williams, her stated conclusion conflicts with Mr. Williams' statement (Exhibit 6: Mr. Williams's Non-Sworn Affidavit). [7]

---

[6] The Complainant is required to report to the head of the directorate, Director of Logistics; please see the attached documents, Labeled Exhibit #: Complainant's Scope of Responsibilities Documents), which confirms management intended to increase the scope of Complainant's level of responsibility.

[7] Mr. Williams stated Mr. Maybank's position description is correct, but Mr. Maybank works 60% outside his PD.

Ms. Heinrichs stated Plaintiff did not offer an appeal. The record shows Plaintiff submitted an appeal to Ms. Heinrichs (ROI 00191-00213/pg. 173-195), who after a phone conference call between Plaintiff and herself, she E-mailed (Dated/Time: July 1, 2015/4:45 PM) that management officials agreed to "Relooked the desk audit" (ROI 00201/pg. 183). Plaintiff was not given any information regarding a follow-up or relook audit.[8] Did she inform her supervisor of the request for an appeal? Mr. Grittman testified there were no appeal requested (ROI 000168/pg. 150). To date, Plaintiff has not received a recertified desk audit or any assistance regarding his appeal.

Mr. King and Mr. Gosciewski are overall responsible for the integrity of the desk audit process. However, Mr. King stated he was not involved in the communication between Ms. Heinrichs and Ms. Taswell (ROI 000129/pg. 111). But Ms. Taswell affirmed that she received documents from Mr. King regarding the desk audit; she again testified she had sent the documents, which were digitally signed, to Mr. King and Mr. Gosciewski. Finally, Mr. Gosciewski testified that his only involvement in the desk audit was to certify the HR Specialist completed evaluation. He also said that the first-level supervisor is critical to the completion of the desk audit process (ROI 000135-000141/ pg. 117-123). Mr. Gosciewski took no action to protect the integrity of the process after he had received documents, relating to the desk audit, from a non-supervisor to the Plaintiff. And, both Mr. Gosciewski and Mr. King have had several of previous EEO complaints filed against them, complaints in which the courts issued judgments against them. So, their credibility is already tested in regards to EEO matters.

---

[8] The HR specialist is required to assist in the appeal process, "Employee Case File Assistance. Supporting HROs will provide assistance to employees by making available regulatory material; requesting statements from employees and supervisors certifying the accuracy of the PD; involving management officials with delegated classification authority, as appropriate; reviewing the technical merits of the case; assembling the appeal submission and case file; making the case file available; advising on requirements for retroactive corrective action; and providing other management advisory services as necessary," *DoDI 1400.25-V511, May 28, 2015.*

Despite CHRA and local policies, which clearly indicates how to conduct a desk audit that is objective, expeditious, and fair, the Agency's officials failed to comply with published policies and procedures in carrying out the audit. This is extremely suspect, especially since the Agency's failure to do so resulted in the denial of a promotion to Plaintiff. And, prior to certifying the audit, management and HR officials failed to notify Plaintiff of the evaluation determination.

It also appears that Mr. King was aware of Plaintiff prior EEO informal complaint. Mr. Williams continuously apprised and updated Mr. King of Plaintiff's informal complaint status, to include the resulting requirement to execute a desk audit. In addition, Mr. King directed the desk audit which directly resulted from the resolution of the prior EEO informal complaint.

Further, Mr. Gosciewski was aware of Plaintiff's protected EEO activity as he signed the desk audit at issue in the instant complaint and was aware that the audit directly resulted from Plaintiff's prior EEO activity. The knowledge these individuals have about Plaintiff's prior EEO activity and their inability to follow Agency's and CHRA's procedures and policies heightens the suspicion that they are continuing to perpetuate the discrimination against Plaintiff's and retaliating against him for engaging in the EEO process.

## IV - Legal Analysis

The Supreme Court has made it clear that retaliatory conduct can give rise to a Title VII claim even when the conduct does not cause an adverse personnel action. *Burlington Northern & Santa Fe. Ry. v. White*, 548 U.S. 53, 68 (2006), "A Plaintiff must show that a reasonable employee would have found the challenged action **materially adverse**, 'which in this context means it well might have dissuaded a reasonable worker from making or

14

supporting a charge of discrimination." If the Agency's actions have the effect or cause of hindering an employee from engaging in protected activity – that is sufficient to state a claim.

Further, reprisal claims generally follow the *McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)* tripartite burden-shifting scheme: first, the Plaintiff must establish a *prima facie* case of reprisal discrimination; then, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its actions; and, last, the burden shifts back to the Plaintiff to demonstrate that the articulated reason is merely a pretext for discrimination. *See Jacobs v. Sec'y of Army*, EEOC Appeal No. 01953952 (1997). Certainly, the many contradicting and inconsistent testimonies by both management and HR officials rise to reasonable inference that their conduct stem from reprisal actions (See Exhibit 4: Analysis of Declarative Statements (Taswell/Grittman/Heinrichs/Williams/King/Gosciewski).

To establish a *prima facie* case of retaliation discrimination, the Plaintiff must show that: (1) he engaged in protected activity; (2) the Agency was aware of his protected activity; (3) subsequently he was subjected to adverse treatment by the Agency; and (4) a nexus exists between the protected activity and the adverse action. *See Fernandez v. Dep't of Transportation*, EEOC Appeal No. 01994671 (2001). Plaintiff's claim meets all four test to establish a prima facie case of retaliation discrimination:

   a. The Agency accepted Plaintiff's informal complaint.

   b. Management and HR officials were aware of the EEO complaint, and the resulting *Negotiated Settlement Agreement*.

c.   Plaintiff was subject to adverse treatment when management and HR officials failed to comply with CHRA policy and procedures, as described in the above <u>Accepted Claim and Undisputed Facts.</u>

d.   The nexus between the protected activity and the adverse action is confirmed by Ms. Taswell's involvement in both the informal and reprisal claims, and the time between events meets the temporal test, as further described below.

One of the principle means of establishing a causal connection between a Plaintiff's protected activity and subsequent adverse action in the proximity in time between the protected activity and the adverse action. In *Speece v. USPS*, EEOC Appeal No. 018319 (1984) the Commission stated, with regard to establishing a causal connection that, the adverse action have "followed the Plaintiff's engagement in protected activity within such a period that one can infer retaliatory motive." Moreover, for purposes of assessing the temporal proximity, the relevant date is not just the date when the Plaintiff filed a complaint but follows throughout the litigation process. *See, e.g.*, *Solomon v. USPS*, EEOC Appeal No. 07A50082 (2006) (finding temporal proximity when several weeks passed between Plaintiff entering to a settlement agreement and the Agency denying Plaintiff's leave request).

In this case, it is undisputed that Plaintiff engaged in protected activity when he filed an informal complaint of discrimination that was settled in December 2014. It is also uncontroverted that Mr. Gosciewski and Mr. King had knowledge of Plaintiff's prior EEO activity as both had decision-making authority over Plaintiff's desk audit that occurred as a result of his previous EEO settlement agreement. **It is also clear that Plaintiff suffered an adverse action in the form of the improperly conducted desk audit**. Finally, a  nexus exists

16

between his prior EEO activity and the desk audit, pursuant to the settlement agreement between Plaintiff and the Agency, entered into in December 2014.

In this case, Plaintiff meets the temporal proximity test. He entered into a settlement agreement with the Agency in December 2014, less than three months later, he learned that the Agency had failed to properly conduct the desk audit. Such a short period of time gives rise to an inference of discrimination. *See, e.g., Leatherman v. Dep't of the Navy*, EEOC Appeal No. 01983615 (2000) (finding retaliation when the passage of time between the protected activity and the adverse action was three years). The adverse action occurred within the timeframe the Commission has accepted to demonstrate temporal proximity.

## V - Deficient Report of Investigation

The Agency presented Plaintiff a deficient ROI, contrary to the requirement stipulated in 29 C.F.R. § 1614.08(b). The Agency failed to complete the investigation in a timely manner, exceeding more than 9 months, and to adequately investigate the allegations, which may have contributed to a deficient ROI as indicated below:

a. Declarative statements or testimonies from Plaintiff key witnesses were not included in the ROI. Plaintiff listed witnesses were not included in the Investigator's report (Ms. Lena Shealayno'sun, Ms. Rhonda Mustafaa and Mr. Stephen Ridenour gave rebuttal testimonies to the EEO Counselor (ROI 000027-000028 & 000031/pg. 9-10 & 13). Ms. Shealayno'sun's also provide a written memorandum for record (ROI 000382/pg. 364), which was not addressed by the Investigator.

b. The ROI did not address a key document (Memorandum and Task-to-Task List, with highlighted comments from Ms. Belinda Taswell (ROI 000145-000146/pg. 127-128) in the

17

report analysis. These documents were submitted or were given to the Human Resource Specialist (Ms. Heinrichs), according to Mr. Grittman's testimony (ROI 000167/pg. 149). The documents may confirms whether or not management official intervened in the Plaintiff's desk audit process. And, the ROI did not include Ms. Heinrichs' "Enclosure 5," which details her discussion with Ms. Taswell (Referenced by Ms. Heinrichs ROI 000217/ pg. 199).

c. The ROI did not include the E-mail messages, pertaining to the Plaintiff's desk audit, between management and HR officials (Mr. Robert Gosciewski, Mr. Reginald King, Mr. Bradley S. Williams, Ms. Belinda Taswell, Mr. Fred Grittman, and Ms. Rebecca Heinrichs). Plaintiff believes these records would prove his case beyond a reasonable inference of retaliatory discrimination.

d. The ROI did not adequately address comparable person(s) within the USACE Logistics Activity who received desk audit. The reference desk audit for a Transportation Assistant, GS-2102-07 in March 2014 (ROI 000011), did not address whether or not a non-supervisor provided input to the HR personnel. If so, did the HR Specialist referenced the non-supervisor's comments in the evaluation process? Prior to the audit certification, was the employee given an opportunity for an objective review of the audit result, and the chance to negotiate his duties with his supervisor in a written agreement? In order to demonstrate equal treatment, the comparison should be based on the conduct of the desk audit process and not the ultimate result or outcome. Did HR and management officials follow CHRA policy/procedures? And, where the procedures applied consistently with other similarly situated employees?

## VI - Motion for Sanction

Pursuant to 29 C.F.R § 1614.109 (e), the Agency is required to complete the investigation within 180-day time period. If The Agency cannot meet the 29 C.F.R. § 1614.108(f) time limit, then the Agency, within that same time limit, is required to issue a notice informing Plaintiff that the Agency has been unable to complete the investigation. The Agency is required to obtain a written agreement from Plaintiff to extend the time limit beyond 180 days (29 C.F.R § 1614.106(e)(2)). The Agency did not request a written agreement to extend the time period from Plaintiff. Instead, after receiving complaint June 11, 2015, the Agency delayed for more than 9 months (about 314 days) to provide Plaintiff the Report of Investigation, which was ultimately, produced on or about April 27, 2016.

The Agency is required to issue final action on a complaint within 180 days, from the date the complaint was filed by the aggrieved; pursuant to 42 U.S.C. 2000e-16(c), "-- Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title." Plaintiff argument, the Agency's failure to take "final action within 180 days" is both grounds for a civil suit and for the Court to sanction the Agency for a timeliness violation under the 42 U.S.C. statute.[9]

---

[9] Note, since the EEOC and Courts consider any violation of the time limits by Plaintiff an "affirmative defense" against discrimination for the Defendant, Plaintiff requests the District Court gives equal weight to the Agency violation of the any period stipulated in 29 C.F.R and 42 U.S.C.

Further, in Accordance with *U.S. Equal Employment Opportunity Commission Handbook for Administrative Judges July 1, 2002*, the EEOC Court's is to assign an Administrative Judge within 15 days of receipt of the docket requesting a hearing. The *EEOC Handbook* states that 'as soon as practicable' after receipt of the complaint file from the Agency, the Administrative Judge should send an acknowledgement and order to: Complaint - -." Also, per 42 U.S. Code Section(s) 2000e-16, once the EEOC receives the docket files requesting a hearing, the EEOC has 180 days to issue decision on the case or to provide a written explanation justifying why the 180-day timeframe needs to be extended.

> "The administrative judge will hear the case, make a final decision on the complaint subject to final action by the Army, including appropriate remedies and relief where discrimination is found, **within 180 calendar days** of EEOC's receipt of your client's request for a hearing, **unless the administrative judge makes a written determination that a good cause exists for extending the time for issuing a decision on the complaint,**" *U.S. Equal Employment Opportunity Commission Handbook for Administrative Judges July 1, 2002*

Plaintiff argues that the EEOC and the Agency failed to take action on his request for hearing by not responding with the "Acknowledgement and Order" or to issue a final decision on the complaint." And, the lengthy processing time for EEO complaints has the effect (intended or otherwise) of serving as a form of **denial of claim**, is itself a **materially adverse action** and **a deterrent** to a reasonable person who wish to make a charge of discrimination.

After the 180-day period had passed, Plaintiff submitted a request for hearing directly to the EEOC and provided a copy of the request to the Agency. A copy of Plaintiff's hearing request

was sent, via certified mail on March 22, 2016, to Mr. Matthew McCoy, Agency Counsel, and Mr.

Robert Harris, Acting EEO Manager (<u>Exhibit 1: Request for Hearing and Motion for Sanctions</u>). The

Agency sent its request for hearing, with the docket files, to the EEOC on April 27, 2016, more than

30 days later (<u>Exhibit 2: Defendant's Hearing Request to the EEOC</u>). But the Agency failed to timely

provide the EEOC a copy of the complaint file, which was required to be submitted within 15 days

after receipt of Plaintiff's request for a hearing (29 C.F.R § 1614.109 (f)): "-- or at any time after

180 days have elapsed from the filing of the complaint, the Plaintiff may request a hearing by

submitting a written request for a hearing directly to the EEOC office indicated in the agency's

acknowledgment letter. The Plaintiff shall send a copy of the request for a hearing to the agency

EEO office. Within 15 days of receipt of the request for a hearing, the agency shall provide a copy

of the complaint file to EEOC and, if not previously provided, to the Plaintiff."

Moreover, the Agency is required to comply with the obligation, under 29 C.F.R §
1614.108(b) and 1614.106(e)(2) to develop an impartial factual record from which a reasonable
fact finder could determine whether or not discrimination had occur. Per the 29 C.F.R. statute,
"(b) In accordance with instructions contained in Commission Management Directives, the
agency shall develop an impartial and appropriate factual record upon which to make findings on
the claims raised by the written complaint. An appropriate factual record is one that allows a
reasonable fact finder to draw conclusions as to whether discrimination occurred." The Agency
failed in this regard, when it provided a deficient and incomplete ROI, which failed to address
crucial testimonies and other relevant information; testimonies and information which strongly
support Plaintiff's claim beyond a reasonable inference.

## VII – Compensation for Damage

Pursuant to 42 U.S.C.A 1981a(a)(1), Plaintiff requests the Court awards pecuniary compensatory damages for retaliatory discrimination because the Agency violated the *Negotiated Settlement Agreement*. And damages for injury to Plaintiff's professional standing, experienced as a result of the Agency's unlawful discriminatory act. The Court should grant the following:

a.  The immediate promotion to GS-14, Step 5, with an effective date of December 19, 2014; the date Plaintiff signed the *Negotiated Settlement Agreement*; (ROI 000466-000470/pg. 448-452)

b.  The reimbursement for legal fees and court cost, in the amount of $8,000.00; and,

c.  Pecuniary compensatory damage in the amount of $100,000.00

## VIII - Conclusion

The Plaintiff has demonstrated that the Agency violated the statues, under 29 C.F.R., by not completing the Report of Investigation and to complete the EEO complaint within 180 days; and/or to obtain a written agreement from Plaintiff to extend the time period. The Courts have found and validated that any violations of the time period on the part of a Plaintiff is ground for dismissal of the case and is an affirmative defense for a Defendant against a claim of discrimination. Plaintiff requests the Court give the same weighted consideration when the Agency violates any time period stipulated by the law. In Maybank v. Speer, Acting Secretary of the Army, Civil Action No. 16-1681 (RDM, the Agency vigorously argue for the Court to enforce the 180-day time period for a Plaintiff to seek civil suit, after a request for hearing to the EEOC. Obviously, the Agency support the importance and enforcement of the applicable laws, in regards to adherence to time periods for EEO processing activities. Plaintiff's agrees that

violations of any time period should be enforce, so the Court should now issue sanction against the Agency for its failure to comply with the applicable laws.

The accepted and undisputed facts of the claim were summarized in Plaintiff motion, infra, which revealed Agency's management and HR officials presented contradicting and inconsistent testimonies regarding their conduct during the execution of Plaintiff's desk audit, which Plaintiff argues is evidence of retaliatory action for protected EEO activity. The management and HR officials failed to protect the integrity of the desk audit process and to comply with CHRA policies and procedures governing the execution of desk audit, and in doing so, violated the terms of the agreed upon *Negotiated Settlement Agreement* in Plaintiff's prior EEO complaint (Annex 7: Electronic Copy of the ROI and Referenced Page List).

The Agency may argue that the Plaintiff was not harmed, therefore no actions should be taken by the Court in regards to the discrimination complaint; i.e. Plaintiff retained his current grade and position. But the 'No-Harm, No-Foul" defense is a farce. There was clearly material harm to Plaintiff, who received a bias and unfair desk audit. Plaintiff was therefore denied promotion to GS-14. Plus, Plaintiff's professional standing and career was harmed.

And, Plaintiff confirmed that the threshold from which a reasonable inference can be drawn, to establish a prima facie case of retaliation discrimination, has been met; see *Fernandez v. Dep't of Transportation, EEOC Appeal No. 01994671 (2001)*:

      d.  Plaintiff engaged in protected activity;

      e.  The Agency was aware of his protected activity;

      f.  Plaintiff was subjected to "materially adverse treatment" by the Agency; and

      g.  A nexus exists between the protected activity and the adverse action.

Finally, Plaintiff moves the Court to find retaliatory discrimination pursuant to the Civil Rights Act of 1964 (Title VII), as amended, there are sufficient evidence to establish a claim of retaliatory discrimination. The Court should order sanction on the Agency for multiple violations of 29 C.F.R. and other applicable laws governing the processing and execution of EEO complaints; for Agency's untimely completion of the Report of Investigation and untimely processing of the EEO complaint. And, any sanction should include immediate remedies to Plaintiff, in terms of compensations for damages.

Sincerely,

Stephen A. Maybank
Per Se Litigant

PO BOX 54088
Millington, TN 38054
(540) 533-2985
E-Mail: buyusa01@gmail.com

List of Exhibits:
Exhibit 1: Request for Hearing and Motion for Sanctions
Exhibit 2: Defendant's Hearing Request to the EEOC
Exhibit 3: Signed Memorandum for Record, Ms. Lena Shealayno'sun
Exhibit 4: Analysis of Declarative Statements
(Taswell/Grittman/Heinrichs/Williams/King/Gosciewski)
Exhibit 5: Complainant's Scope of Responsibilities Documents
Exhibit 6: Mr. Williams' Non-Sworn Affidavit
Exhibit 7: Electronic Copy of the ROI and Referenced Page List